Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIVINGSTON BOARD OF EDUCATION,<br>Plaintiff,<br>v.<br>D.A. & P.A., on behalf of D.A.,<br>Defendants. | Civil Action No. 17-8802 (ES) (MAH)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court are cross-motions for summary judgment filed by Plaintiff, Livingston Board of Education (the "District"), and Defendants D.A. and P.A. on behalf of their son, D.A. (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 56. (D.E. Nos. 20-3 & 18-3). This special education matter comes before the Court on the District's appeal of the Administrative Law Judge's ("ALJ") July 25, 2017 decision ("Final Decision") granting Defendants' due process petition. (D.E. No. 1). Relevant here, the ALJ held that the District failed to provide D.A. a free appropriate public education for the 2015–2016 academic year and awarded Defendants' reimbursement for D.A.'s out-of-district school placement. (D.E. No. 18-1 ("ALJ Dec.") at 17–18). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court GRANTS the District's motion in-part, DENIES Defendants' motion, and REMANDS this matter to the ALJ.

I.  BACKGROUND

The Court first provides the legal framework governing this special education matter pursuant to the Individuals with Disabilities Education Act to contextualize the factual and

1

procedural history.

### A.     Individuals with Disabilities Education Act ("IDEA")

Congress enacted the IDEA to ensure that children with disabilities receive a free appropriate public education ("FAPE"). *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179–83 (1982) (recounting the history and purpose of the IDEA); *see* 20 U.S.C. § 1412(a)(1). Under the IDEA, public educational institutions must evaluate, "identify[,] and effectively educate" disabled students by providing them with a FAPE or, alternatively, "pay for their education elsewhere if they require specialized services that the public institution cannot provide." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735, 738 (3d Cir. 2009); *see D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A FAPE "consists of educational instruction specially designed to meet the unique needs of the . . . child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188–89; *see Sch. Dist. of Philadelphia v. Kirsch*, 722 F. App'x 215, 222 n.5 (3d Cir. 2018).

A public education institution provides a FAPE by way of an "individualized education program" ("IEP"), which is the cornerstone of the IDEA. 20 U.S.C. § 1414(d). A child's IEP is a written document that must include several elements such as the child's present level of performance and measurable yearly goals in light of the child's disability. *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (citing 20 U.S.C. § 1414(d)(1)(A)).[1] The IEP must also state "the special services that the school will provide" the child. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012) (quoting *Schaffer v. Weast*, 546 U.S. 49, 53 (2005)). The IEP "must be 'reasonably calculated' to enable the child to receive 'meaningful educational

---

[1]     New Jersey's rules regarding the development of an IEP mirror federal requirements. *S.H.*, 336 F.3d at 264; N.J. Admin. Code § 6A:14-3.7. In addition, Section 6A:14-2.7 of New Jersey's Administrative Code includes the parallel state procedures relevant to the instant inaction.

benefits' in light of the student's 'intellectual potential.'" *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (quoting *Polk v. Cent Susquehanna Interm. Unit 16*, 853 F.2d 171, 181 (3d Cir. 1988)). Once a child's educational program is determined, the school district must attempt to place the child in the "least restrictive environment." 20 U.S.C. § 1412(a)(5).

Under the IDEA, dissatisfied parents may challenge a school district's determinations in an administrative proceeding. *See* 20 U.S.C. § 1415(b)(6)–(7). In New Jersey, parents may file a complaint with the state's Office of Administrative Law ("OAL") (N.J. Admin Code § 6A:14-2.7), and seek an impartial due process hearing regarding "the identification, evaluation, or educational placement of the[ir] child, or the provision of a [FAPE] to such child . . . ." § 1415(b)(6)(A); *see also* § 1415(f)(1)(A). Furthermore, the administrative process delineated under the IDEA "is conducted in compliance with state procedures." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (citing 20 U.S.C. § 1415(f)(1)(A)). A party who is dissatisfied with the outcome of an administrative decision rendered under 20 U.S.C. § 1415(f) may file an appeal in "any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). Accordingly, this Court has jurisdiction over the present dispute. *See id.*

Relevant here, "[p]arents may unilaterally place their child at a different school, but are eligible for reimbursement from the school district if, and only if, the school district has not offered the student a FAPE." *J.F. v. Byram Twp. Bd. of Educ.*, 812 F. App'x 79, 81 (3d Cir. 2020) (citing *Shore Reg'l*, 381 F.3d at 198); N.J. Admin. Code § 6A:14–2.10(d). Thus, when parents seek reimbursement for a unilateral placement, the first inquiry is whether the school district offered a FAPE. *Shore Reg'l*, 381 F.3d at 198–99. The school district must show that "it complied with the

3

procedures set out in the IDEA and that the IEP was 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the child's 'intellectual potential.'" *Id.* at 199 (citing *Rowley*, 458 U.S. at 206–07). If the school district offered a FAPE, then "no reimbursement is required." *Id.* at 198 (citing N.J. Admin. Code § 6A14–2.10(a)).

If, however, the school district did not provide a FAPE, the second inquiry is whether the parents acted appropriately in removing the child from the school district. *Id.* at 199. Under the IDEA and New Jersey's Administrative Code, reimbursement may be reduced or denied under four specific circumstances.[2] 20 U.S.C. § 1412(a)(10)(C)(iii); N.J. Admin. Code § 6A:14-2.10(c). Notably, precedent states that "[e]ven where a [d]istrict is found to be in violation of the IDEA and private school placement is deemed appropriate, 'courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant.'" *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 71 (3d Cir. 2010) (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009)); *see J.F.*, 812 F. App'x at 82.

### B.  Factual and Procedural History[3]

#### i. D.A.'s Educational Background

When this matter was initially filed before the OAL, D.A. was a sixteen-year-old student

---

[2]   For example, reimbursement for a child's unilateral placement may be reduced or denied for any of the following reasons: "(1) the parents did not inform the district at the most recent IEP meeting that they were [rejecting the IEP or their intention to enroll the child in an out of district placement]. . . ; (2) the parents failed to provide written notice to the district at least 10 business days prior to removal of their intent to unilaterally remove the student and seek reimbursement; (3) the district proposed a reevaluation prior to the removal and the parents did not make the student available for reevaluation; or (4) a judicial body finds the parental actions unreasonable." *W.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, No. 13-3423, 2014 WL 793459, at *2 (D.N.J. Feb. 26, 2014) (citing 20 U.S.C. § 1412(a)(10)(C)(iii)); *accord J.F.*, 812 F. App'x at 81 (citing N.J. Admin. Code § 6A:14-2.10(c)).

[3]   The Court summarizes the factual and procedural history from the District's statement of undisputed material facts and Defendants' response thereto (*see* D.E. Nos. 20-5 & 23-3 (together, "SMF")). The District's statement of undisputed material facts cites to the administrative record below. (D.E. No. 20-5 (citing D.E. Nos. 21-1 through 21-18, Exhibits B–R appended to D.E. 20-2, Ulscht Declaration ("Ulscht Decl.")))). For ease of reference, all pin cites to the following exhibits refer to pagination automatically generated by the CM/ECF: Docket Entry Numbers 21-2 ("Ex. B"), 21-7 ("Ex. G"), 21-9 ("Ex. I"), and 21-17 ("Ex. Q"). Pin cites to Docket Entry Numbers 21-13 ("Ex. M") and 21-14 ("Ex. N") refer to the documents' transcript pagination. Although Defendants' moving brief contains a section

who, at all relevant times, resided in the Township of Livingston.  (SMF ¶ 1).  D.A. attended schools within the District through eighth grade and received special education and related services under the IDEA from the District until December 2015.  (*Id.* ¶¶ 1–2, 27).  Since the second grade, D.A.'s IEP classification reflected "Specific Learning Disability;" however, in December 2015, the District's proposed IEP ("December 2015 IEP") changed D.A.'s classification to "Other Health Impaired."  (D.E. No. 18 ¶¶ 3–4; *see also* SMF ¶ 2; ALJ Dec. at 3).

After D.A. completed eighth grade in the District's Heritage Middle School, he underwent a psychiatric evaluation by Dr. Ellen Platt during the summer of 2015.  (SMF ¶¶ 3–4; Ex. Q at 2).  As background, Defendants apparently rejected the District's proposed IEP from June 2015 and requested additional evaluations, which prompted Dr. Platt's involvement.[4]  (D.E. 18 ¶¶ 18–22).  Dr. Platt found D.A. to be "exceedingly anxious" with indications of anxiety; she recommended a school placement that would meet D.A.'s needs academically, emotionally, and cognitively, which included therapeutic and educational supports.  (SMF ¶¶ 4–6 & 9).  Dr. Platt also recommended a small class size along with supports and opportunities for personalized attention.  (*Id.* ¶¶ 7–8).  On August 25, 2015, D.A.'s pediatrician diagnosed him with generalized anxiety disorder.  (*Id.* ¶ 12).  During an IEP meeting on August 31, 2015, the District placed D.A. on home instruction for the start of ninth grade at Defendants' request.[5]  (*Id.* ¶¶ 13–14).  D.A. ultimately received home school

---

entitled "Statement of Undisputed Material Facts" (D.E. No. 18 at 7–14, ¶¶ 1–44), it was not filed as a separate document contrary to Local Civil Rule 56.1(a), and the District declined to file a responsive statement of material facts.

[4] Relevant here, it appears that D.A. struggled with anxiety during eighth grade, impacting his academic performance.  (*See* ALJ Dec. at 4–5 (recounting testimony from school psychologist, Dr. Kristin Pannorfi, who evaluated D.A. in May 2015); D.E. 18 at ¶¶ 7–15 (noting D.A.'s anxiety and declining performance which prompted D.A.'s mother to request new evaluations in April 2015)).

[5] Defendants do not persuasively dispute that they requested D.A.'s homebound instruction.  Instead, they merely state that "[h]ome instruction was the only option for D.A. because he was being offered placement at Livingston High School with in class support and a math lab."  (SMF ¶ 14).  Furthermore, the record reflects that they asked, during the August 31, 2015 IEP meeting, "for homebound instruction due to [D.A.'s] anxiety disorder."  (Ex. G).

instruction from September 2015 through December 2015. (*Id.* ¶ 16; ALJ Dec. at 13). At the same IEP meeting, the Monmouth Court Program—"a general education program with special education and therapeutic supports operated by the District"—was mentioned and Defendants agreed to visit it. (SMF ¶ 15).

On October 27, 2015, the District sought a medical update from D.A.'s physician. (*Id.* ¶ 17). Defendants, through counsel, subsequently requested an IEP meeting on November 4, 2015.[6] (*Id.* ¶ 18). In the same letter, Defendants mentioned D.A.'s acceptance at the Craig School and that they were "seriously considering Craig as a placement." (Ex. I.) In addition, Defendants admit that they requested placement at the Craig School from the District since April 2015. (SMF ¶ 19). Approximately two weeks later, on November 19, 2015, counsel for Defendants sent the District a letter reflecting Defendants' intent to unilaterally place D.A. at the Craig School as of December 7, 2015.[7] (*Id.* ¶ 21). An IEP meeting was held on December 3, 2015. (*Id.* ¶ 22). Although the parties dispute the exact parameters of the proposed placement, the December 2015 IEP placed D.A. in the District's Monmouth Court Program. (*See id.* ¶¶ 23–26).

On December 7, 2015, four days after the last IEP meeting, Defendants unilaterally placed D.A. at the Craig School. (*Id.* ¶ 27). Defendants filed a due process petition on December 24, 2015, seeking tuition and transportation reimbursement for D.A.'s attendance at the Craig School. (*Id.* ¶ 28).

### ii. The ALJ's Final Decision

An administrative due process hearing was held before the ALJ over the course of six days:

---

[6] Defendants contend that they previously requested an IEP meeting on October 27, 2015, which the District did not address. (SMF ¶ 18).

[7] Defendants maintain that they sent the November 19, 2015 letter after the District failed to respond to prior correspondence. (SMF ¶ 21).

6

October 5 and 24, 2016, and January 3, 11, 23, and 25, 2017. (ALJ Dec. at 2). The two issues before the ALJ were (i) whether the District provided D.A. a FAPE for the 2015–2016 academic year (ninth grade), and (ii) whether D.A.'s unilateral placement at the Craig School was reasonable under the circumstances. (*Id.*). After summarizing testimony from nine witnesses for both parties (*id.* at 2–15), the ALJ found that D.A.'s IEPs for both the 2014–2015 and 2015–2016 academic years were "inadequate" and "did not meet D.A.'s unique needs." (*Id.* at 16). Accordingly, the ALJ concluded that the District failed to provide D.A. a FAPE for the 2015–2016 academic year, the only period for which Defendants sought reimbursement. (*Id.* at 17–18; Ex. M at 6:12–20 & 7:12–16). In addition, the ALJ found that D.A.'s unilateral placement at the Craig School was reasonable under the circumstances and awarded Defendants reimbursement for D.A.'s tuition beginning December 7, 2015. (ALJ Dec. at 16 & 18).

After the District filed this action appealing the ALJ's Final Decision, Defendants moved for summary judgment and the District filed a cross motion. (D.E. Nos. 18-3 & 20-3). The matter was fully briefed (*see* D.E. Nos. 18, 20, 23 & 24), and the Court set oral argument to address the motions. (D.E. No. 35). Upon receiving notice that defense counsel would be out-of-state, the Court cancelled oral argument. (D.E. Nos. 36 & 37). Thereafter, the Undersigned held a status conference and the parties engaged in settlement discussions with Magistrate Judge Michael A. Hammer. (D.E. Nos. 41, 42–43, 45–46). Following unsuccessful settlement discussions, the parties reinstated the instant motions for summary judgment. (D.E. Nos. 47–49).

## II.     LEGAL STANDARD

Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The mere existence of an alleged disputed fact is not enough. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986). Rather, the opposing party must prove that there is a genuine dispute of a material fact. *Id.* at 247–48. An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.* The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

In a case appealing an ALJ's decision under the IDEA, district courts apply "a modified version of *de novo* review" and must "give due weight to the factual findings of the ALJ." *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). Under this standard, "factual findings from the administrative proceedings are to be considered prima facie correct." *S.H.*, 336 F.3d at 270. Factual findings with respect to the appropriateness of an IEP are reviewed for clear error. *P.P.*, 585 F.3d at 735. Further, the court must accept the ALJ's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." *Shore Reg'l*, 381 F.3d at 199. If the court departs from the ALJ's findings, it must find factual support in the record and fully explain its reasons for departing from the ALJ's decision. *S.H.*, 336 F.3d at 270–71. The ALJ's legal determinations, however, are reviewed *de novo*. *See, e.g.*, *P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

Moreover, the district court cannot "substitute [its] own notions of sound educational policy for those of the school authorities." *Rowley*, 458 U.S. at 206. This is because courts are not equipped with the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy" in the first instance. *Id.* at 207–08. Thus, when the

8

administrative body fails to provide an adequate explanation for its findings, the district court may remand the matter for further development. *See, e.g.*, *Upper Freehold Reg'l Bd. of Educ. v. T.W.*, 496 F. App'x 238, 244–45 (3d Cir. 2012).

### III.    ANALYSIS

In this matter, the District avers that the ALJ erred by (i) hearing evidence from D.A.'s 2014–2015 academic year (eighth grade), and (ii) failing to explain her conclusion that the District did not offer D.A. a FAPE for the academic year in dispute, 2015–2016 (ninth grade). (D.E. No. 20 at 20–26). The District also maintains that the underlying record supports the conclusion that it offered D.A. a FAPE. (*Id.* at 27–34). Thus, the District asks the Court to reverse the ALJ's Final Decision or, alternatively, remand the matter for a new impartial due process hearing. (*Id.* at 1–2, 20–21, 24 & 35). On the other hand, Defendants contend the ALJ correctly concluded that the District failed to provide D.A. a FAPE and that his placement at the Craig School was appropriate. (D.E. No. 18 at 16–31). As the prevailing party below, Defendants seek to affirm the ALJ's Final Decision. (*Id.*). In addition, Defendants request summary judgment on their counterclaim for attorneys' fees in connection with both the administrative proceedings below and this lawsuit. (*Id.* at 31–32; D.E. No. 4 at 15, ¶¶ 1–3).

### A.    The ALJ Did Not Err by Allowing Testimony from the 2014–2015 Academic Year

On the first day of the due process hearing before the ALJ, Defendants confirmed that they were not seeking compensatory education for the 2014–2015 academic year. Specifically, Defendants' counsel stated:

> And, Your Honor, I had a discussion prior to the commencement of the hearing with my clients and we are willing to drop the request for the compensatory education for the eighth grade year and focus on his high school, freshman and—we're in sophomore year now,

9

> but the reimbursement for the freshman year so that should sort of streamline the case a bit, so I appreciate their willingness to do that.

(Ex. M at 6:12–20; *id.* at 7:12–16 (confirming that "'14–'15 is off the table, I mean, other than where it's -- where -- . . . but other than that we're not seeking compensatory ed[ucation] for that year.")).

The District contends that counsel's statement amounted to an agreement "that the scope of the hearing would be limited to determining the appropriateness of the program proposed by [the District] for the 2015–2016 school year," not the 2014–2015 academic year. (D.E. No. 20 at 22). As such, the District avers it refrained from presenting evidence about D.A.'s educational program from 2014–2015 in reliance on Defendants' representations. (*Id.* at 21–22). Throughout the hearing, however, the District claims that Defendants offered testimony regarding the 2014–2015 academic year, which the ALJ permitted over the District's objections. (*See id.* (citing, for example, Ex. M. at 211:19–212:18)). Accordingly, the District argues that it was prejudiced because the ALJ considered evidence concerning the 2014–2015 academic year to conclude that the District failed to offer D.A. a FAPE in a later year—that is, for the 2015–2016 academic year. (D.E. 20 at 22–23).

The Court disagrees. The District mischaracterizes defense counsel's statements and the ALJ's consideration of evidence pertaining to D.A.'s 2014–2015 academic year. Defendants simply agreed to forego their claim for *compensation* pertaining to the 2014–2015 academic year. (Ex. M at 6:12–20 & 7:12–16). The District does not point to any additional statements that suggest the hearing would be limited to *evidence* or *testimony* solely on the 2015–2016 academic year. (*See generally* D.E. Nos. 20 & 24). Rather, certain testimony related to the 2014–2015 academic year was appropriate for foundational purposes. In other words, the prior academic year provides relevant background information regarding D.A.'s specific educational history. (*See* Ex.

N at 66:6–24). And, it appears that the District did not object to testimony from the 2014–2015 academic year for that purpose. (Ex. M at 212:15–18 ("And I have no objection with Ms. Steiger testifying to what was in the previous IEP, with respect to why the Monmouth Court placement is different from that.")).

Moreover, the ALJ—as the finder of fact—has extensive discretion to conduct hearings and develop the record. *See Bd. of Educ. of Borough of Mountainside v. Bd. of Educ. of Twp. of Berkeley Heights*, No. A-6215-07T3, 2011 WL 9177, at *7 (N.J. Super. Ct. App. Div. Mar. 15, 2010) (citing N.J. Admin. Code § 1:1-14.6(p)); *accord L.G. ex rel. E.G. v. Fair Lawn Bd. of Educ.*, 486 F. App'x 967, 975 (3d Cir. 2012). For example, the New Jersey Administrative Code provides the ALJ with substantial discretion to "control the presentation of the evidence and the development of the record and [to] determine admissibility of all evidence produced" as well as "permit narrative testimony whenever appropriate." N.J. Admin. Code § 1:1-14.6(i). In addition, the ALJ "may take such other actions as are necessary for the proper, expeditious and fair conduct of the hearing or other proceeding, development of the record and rendering of a decision." *Id.* § 1:1-14.6(p). For these reasons, the ALJ did not abuse her discretion by hearing testimony regarding the 2014–2015 academic year.[8]

### B. Remand is Necessary Given the ALJ's Scant Explanation

Ultimately, the Court agrees that this matter must be remanded to the ALJ for further

---

[8] The Court similarly disagrees with the District's assertion that it was precluded from offering rebuttal testimony on the 2014–2015 academic year after Defendants rested their case. (D.E. No. 20 at 22). Significant here, although both parties failed to attach the pertinent transcript from January 25, 2017, to their respective motions, it appears that the ALJ allowed the District to present rebuttal testimony from Mr. Todd Mitchell over Defendants' objections. (*Compare* Ex. N at 199:11–12 (proffering Mr. Mitchell as a rebuttal witness on January 23, 2017, but adjourning before the ALJ's ruling), *with* ALJ Dec. at 12 (recounting testimony from Mr. Mitchell on rebuttal)). Tellingly, the District does not point to any specific evidence or witnesses that it sought to present on rebuttal in connection with the 2014–2015 academic year. (D.E. No. 20). In addition, to the extent the ALJ relied on testimony regarding the 2014–2015 academic year to conclude that the District did not provide D.A. a FAPE for the 2015–2016 academic year, the Court directs the parties to Section III.B of this Opinion.

explanation. (D.E. No. 20 at 24). Although the ALJ's Final Decision is eighteen pages long, fifteen of those pages merely summarize witness testimony. (ALJ Dec. at 2–15). Meanwhile, the "FINDINGS OF FACT" section spans half a page and is comprised of five points that each contain short, conclusory sentences. (*Id.* at 15–16). For example, and relevant here, the ALJ summarily concluded:

> 4. The Respondent District offered D.A. an inadequate IEP for D.A.'s eighth- and ninth-grade school years, it did not meet D.A.'s unique needs.
>
> 5. D.A.'s unilateral placement at the Craig School was appropriate under the circumstances. D.A. started at the Craig School on December 7, 2015.

(*Id.* at 16). Next, the Final Decision provides the ALJ's "LEGAL ANALYSIS AND CONCLUSIONS." After briefly reciting the relevant legal standard, the ALJ concluded the following, without citing or referring to any record evidence:

> I **CONCLUDE** that D.A. did not make educational progress particularly in the 8th grade. D.A. was anxious while attending Livingston and said anxiety negatively impacted his ability to learn and socialize with his peers . . . . I **CONCLUDE** that it was inappropriate for D.A. to remain in the district school for the district was offering more of the same and that same was not providing D.A. with a meaningful educational benefit.

(*Id.* at 17–18).

The Court is unable to conduct a meaningful review of the ALJ's factual findings and legal conclusions as stated in the Final Decision. First, the ALJ's factual findings are not explained by any citations to the record or pertinent testimony. (*Id.* at 15–16). For example, there is no explanation for the finding that D.A.'s IEPs for both the eighth and ninth grade were "inadequate" and "did not meet [his] unique needs." (*See id.* at 16). Similarly, there is no explanation as to why D.A.'s unilateral placement at the Craig School was reasonable under the circumstances. (*Id.*).

As such, the Court cannot discern the basis for the ALJ's findings. Second, after hearing testimony from nine witnesses over the course of six days, the Final Decision simply recounts testimony without making discernable credibility determinations. (*See id.* at 2–15). Thus, the weight afforded to the witnesses' testimony is unclear.

Third, because the ALJ's conclusion hinges on these undeveloped factual findings, the Court similarly cannot discern its basis. The ALJ concluded that the District failed to provide D.A. a FAPE for the 2015–2016 academic year because it "was offering more of the same and that same was not providing D.A. with a meaningful educational benefit." (*Id.* at 18). In other words, the ALJ believed that the December 2015 IEP was virtually indistinguishable from the pertinent IEP from D.A.'s 2014–2015 academic year.[9] D.A.'s IEPs for the eighth and ninth grade, however, contained several differences. For example, the February 2015 IEP placed D.A. at Heritage Middle School, while the December 2015 IEP placed him at the Monmouth Court program. (*Compare* Ex. Q at 1 (February 2015 IEP), *with* Ex. B at 11 (December 2015 IEP)). Moreover, the December 2015 IEP offered a variety of therapeutic supports which were *not* offered in the February 2015 IEP.[10] (*Compare* Ex. Q, *with* Ex. B at 11 (stating that D.A. will participate in the Effective School Solutions program at Monmouth Court—a "school-based counseling program that provides individual, group, and family counseling as well as a Learning Strategies class component")). Without any attempt to reconcile the differences in these IEPs,[11] the Court simply cannot evaluate

---

[9]  Here, the Court refers to the IEP dated February 12, 2015 ("February 2015 IEP"), the last IEP Defendants consented to during the 2014–2015 academic year. (Ex. Q).

[10]  For example, notwithstanding the ALJ's conclusion that "D.A. is a child that has been significantly impacted by anxiety in attending school" (ALJ Dec. at 17), it is unclear how the ALJ determined that the District's IEP for 2015–2016—which included a variety of therapeutic supports (Ex. B at 11)—did not meet D.A.'s unique needs.

[11]  Important here, the Court agrees with Defendants that "the issue is not a comparison between [Monmouth Court] and [the Craig School]." *See S.H.*, 336 F.3d at 271; (D.E. No. 18 at 30–31; D.E. 23 at 13–15). Rather, the Court takes issue with the ALJ's unsupported conclusion that the District did not provide a FAPE because it offered "more of the same," which inevitably involved a comparison between D.A.'s February 2015 IEP and December 2015

the ALJ's conclusion that the District offered "more of the same," rendering the December 2015 IEP inadequate. Even if D.A. did not progress under the February 2015 IEP, that finding does not automatically render the December 2015 IEP inappropriate. *See, e.g.*, *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3d Cir. 1995) (explaining that "[e]ven if the observation about progress under the [prior] IEP did reflect on the legal appropriateness of the [subsequent] IEP, it could not, standing alone, support the hearing officer's conclusions about the [latter] IEP: additional inferences and conclusions would have to be drawn"); *P.D. v. Franklin Twp. Bd. of Ed.*, No. 05-2363, 2006 WL 753152, at *8 (D.N.J. Mar. 23, 2006).

In short, the ALJ's failure to explain her factual findings leaves more questions than answers. As a result, the Court cannot meaningfully review the ALJ's Final Decision. *See, e.g.*, *H.L. o/b/o V.L. v. Marlboro Twp. Bd. of Educ.*, No. 16-9324, 2017 WL 5463347, at *9 (D.N.J. Nov. 14, 2017). It is not the Court's role to sift through the parties' conflicting interpretations of the evidence and make credibility assessments in the first instance without the benefit of having observed the witnesses. *See B.G. v. Ocean City Bd. of Educ.*, No. 13-5166, 2014 WL 4798647, at *8 (D.N.J. Sept. 26, 2014) (noting that "in the first instance it is appropriate for the ALJ to address [such] issues"). Significant here, this Court lacks the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy," and "must be careful to avoid imposing [its] view of preferable educational methods upon the State[]." *See Rowley*, 458 U.S. at 207–08. As such, the Court agrees with the District that "the proper remedy is a remand." (D.E. No. 20 at 24). Akin to other courts in the District of New Jersey, it is far more prudent to remand this matter so that the ALJ can provide fulsome explanations for her factual findings while utilizing her specific knowledge and experience. *See, e.g.*, *H.L.*, 2017 WL 5463347, at *8 n.8

---

IEP. The comparison that the ALJ appeared to undertake did not consider D.A.'s unilateral placement at the Craig School. (*See* ALJ Dec.).

(citing *Upper Freehold Reg'l*, 496 F. App'x at 244–45); *R.S. v. Montgomery Twp. Bd. of Educ.*, No. 10-5265, 2012 WL 2119148, at *7 (D.N.J. June 11, 2012) (remanding to the ALJ "for redetermination of whether plaintiff received a FAPE" because the court was "left with the impression that the factual record need[ed] . . . further develop[ment]"); *see also Christine C. v. Hope Twp. Bd. of Educ.*, No. 18-3984, 2021 WL 363743, at *13 (D.N.J. Feb. 2, 2021) (collecting cases from other district and circuit courts); *accord R.R. v. Manheim Twp. Sch. Dist.*, 412 F. App'x 544, 549 (3d Cir. 2011) ("There is a reason for insisting on administrative review and the heightened level of deference accorded to its results: judicial review is 'by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" (quoting *Rowley*, 458 U.S. at 206)); *Carlisle*, 62 F.3d at 526 ("To prohibit the court from remanding for clarification would impair the court's ability to review the decision fairly[.]").

Accordingly, the Court remands this matter to the ALJ to supplement the Final Decision. On remand, the ALJ should explain the basis for finding that the December 2015 IEP did not meet D.A.'s unique needs. In doing so, the ALJ shall clarify the testimony, make necessary credibility assessments, and reference specific evidence in support of the findings.[12] Specifically, the ALJ shall clarify exactly how the District offered "more of the same" in D.A.'s December 2015 IEP. At this point, if the ALJ still concludes that the District did not offer D.A. a FAPE, the ALJ must also consider and adequately explain whether Defendants' unilateral placement of D.A. at the

---

[12] Although Defendants maintain that that the ALJ's decision was supported by non-testimonial evidence (D.E. No. 23 at 7), the Final Decision does not cite that evidence. (*See generally* ALJ Dec.). Similarly, the parties' briefs contain scarce record citations in support of their arguments. (D.E. Nos. 18, 20, 23 & 24). Moreover, it appears that the Court does not have the entire administrative record. (*Compare* ALJ Dec. at 19–21 (listing over forty documents in the record, *with* Ulscht Decl. (attaching approximately seventeen exhibits to the District's motion for summary judgment)). In addition, Defendants did not file any record evidence in support of their motion for summary judgment, which preceded the District's cross-motion. Nor did the District file the administrative record with this appeal.

Craig School was reasonable under the circumstances.[13]

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the District's motion for summary judgment in-part, DENIES Defendants' motion for summary judgment, and REMANDS this matter to the Administrative Law Judge.  An appropriate Order accompanies this Opinion.

Dated: August 20, 2021                    /s/ *Esther Salas*
                                          **Esther Salas, U.S.D.J.**

---

[13]  At this juncture, because the Court remands this matter to the ALJ for further clarification, Defendants' motion for summary judgment on its counterclaim for attorneys' fees is denied *without prejudice*.  (D.E. No. 18 at 31–32; D.E. No. 23 at 23).

16